## **EXHIBIT B**

**License Agreement**

## LICENSE AGREEMENT

This License Agreement (this "Agreement") made this 1st day of March, 2012 (the "Effective Date"), by and between **Textile Management Associates, Inc.,** a corporation organized and existing under the laws of the State of Georgia, USA, whose address is 1906 South Hamilton Street, Dalton, Georgia, USA ("TMA") and **Astroturf , LLC,** a limited liability company organized and existing under the laws of the State of Michigan, whose address is 1906 S Hamilton St Dalton GA 30720 ("ASTRO").

### RECITALS

WHEREAS, TMA is the owner of certain trademarks, patents and patent applications relating to synthetic turf sports surfaces;

WHEREAS, ASTRO markets and sells synthetic turf products to the Sports Playing Fields and Tracks markets (as defined below) in the Territory (as defined below) utilizing its own trademarks and patents relating to synthetic sports surfaces;

WHEREAS, ASTRO desires to be licensed by TMA to use the TMA Trademarks (as defined below) in respect of the marketing and sale of the Products (as defined below) to the Sports Playing Fields and Tracks markets in the Territory in conjunction with the ASTRO Trademarks (as defined below) on the terms set out in this Agreement;

WHEREAS, ASTRO desires to be licensed by TMA to use the TMA Patents (as defined below) in respect of the marketing and sale of the TMA Products (as defined below) to the Sports Playing Fields and Tracks markets in the Territory in conjunction with the use of both the TMA Trademarks and the ASTRO Trademarks (as defined below) on the terms set out in this Agreement;

WHEREAS, TMA is willing to permit ASTRO to use the TMA Trademarks in the marketing and sale of the Products to the Sports Playing Fields and Tracks markets in the Territory in conjunction with the ASTRO Trademarks on the terms set out in this Agreement;

WHEREAS, TMA is willing to permit ASTRO to use the TMA Patents in the marketing and sale of the TMA Products to the Sports Playing Fields and Tracks markets in the Territory in conjunction with the use of both the TMA Trademarks and the ASTRO Trademarks on the terms set out in this Agreement

NOW THEREFORE, in consideration of the premises and mutual covenants and agreements set forth below, the parties here covenant and agree as follows:

1.     **Definitions.**

1.1     In this Agreement, the following terms have the following meanings:

1

"Co-Branded Products" means Products marketed and sold with one or more of the TMA Trademarks accompanied by one or more of the ASTRO Trademarks;

"ASTRO Products" means synthetic turf surface products for Sports Playing Fields and Tracks for which ASTRO owns the patents, has patent applications pending, or has developed the intellectual property;

"ASTRO Patents" means those patents and applications for patents set forth on Schedule 1A attached hereto and incorporated herein by reference thereto together with such patents and applications for patents as may be added to Schedule 1A by mutual agreement of the parties from time to time, together with (i) any and all inventions claimed or described in such patents, together with any and all improvements thereto, (ii) any continuation, continuation-in-part, division, conversion, removal, or substitute thereof, or any reissue, or re-examination thereof, and (iii) all related copyrights and other intellectual property rights relating thereto;

"ASTRO Trademarks" means those trademarks, service marks and trade names set forth on Schedule 1 attached hereto and incorporated herein by reference thereto, including any trade names attributable to or used with any such trademarks, together with such other trademarks, service marks and trade names as may be added to Schedule 1 by mutual written agreement of the parties from time to time;

"Licensed Territory" means any area outside the Territory in which there is an existing license between TMA and one or more third parties for the use of the TMA Trademarks and TMA Patents in connection with the sale of TMA Products to the Sports Playing Fields and Tracks markets in such area.

"Product" or "Products" means ASTRO Products and TMA Products;

"Sports Playing Fields and Tracks" means (i) athletic fields, arenas, stadiums and other venues which are (1) intended for use for football, soccer, lacrosse, field hockey, baseball or softball and (2) contain not less than 30,000 square feet of playing surface, and (ii) athletic surfaces, including, but not limited to, tracks, which are used for running, racing or similar activity;

"Supply Agreement" means that certain Supply Agreement of even date herewith between ASTRO and Synthetic Turf Resources, LLC, a Georgia limited liability company which is an affiliate of TMA ("STR");

"TMA Patents" means those patents and applications for patents set forth on Schedule 2 attached hereto and incorporated herein by reference thereto together with such patents and applications for patents as may be added to Schedule 2 by mutual agreement of the parties from time to time, together with (i) any and all inventions claimed or described in such patents, together with any and all improvements thereto, (ii) any continuation, continuation-in-part, division, conversion, removal, or substitute thereof, or any reissue, or re-examination thereof, and (iii) all related copyrights and other intellectual property rights relating thereto;

2

"TMA Products" means synthetic turf surface products for Sports Playing Fields and Tracks for which TMA owns the patents, has patent applications pending, or has developed the intellectual property;

"TMA Trademarks" means those trademarks, service marks and trade names set forth on Schedule 3 attached hereto and incorporated herein by reference thereto, including any trade names attributable to or used with any such trademarks, together with such other trademarks, service marks and trade names as may be added to Schedule 3 by mutual written agreement of the parties from time to time; and

"Territory" means the United States of America.

"Unlicensed Territory" means any area outside the Territory in which there is no existing license between TMA and any third party for the use of the TMA Trademarks and TMA Patents in connection with the sale of TMA Products to the Sports Playing Fields and Tracks markets in such area.

## 2.   Grant.

2.1    TMA grants to ASTRO a license to use the TMA Trademarks in the marketing and sale of the Products to the Sports Playing Fields and Tracks markets in the Territory and TMA grants to ASTRO a license to use the TMA Patents in the marketing and sale of the TMA Products to the Sports Playing Fields and Tracks markets in the Territory, subject to the terms and conditions of this Agreement. For the avoidance of doubt, the location of a project to install Products (and not the location of a customer or potential customer) determines whether or not the marketing and sale of any of the Products is within the Territory.

2.2    The license hereby granted by TMA to ASTRO shall be exclusive except as follows: (i) TMA reserves the right to use the TMA Trademarks and the TMA Patents (1) in an Unlicensed Territory (2) inside the Territory in connection with products not within the Sports Playing Fields and Tracks markets; (3) with respect to TMA Patents only (and not TMA Trademarks) inside the Territory in the Sports Playing Fields and Track markets in connection with the sale of Products that are off-quality or inventory liquidations; and (ii) with respect to distributors to whom TMA has previously licensed the TMA Trademarks or the TMA Patents within the Territory for TMA Products ("Pre-Existing Licensees"), for which TMA has provided a complete list, including name, contact person, address, phone number, email address (if available) of each such Pre-Existing Licensee on Schedule 4 hereto, and such Pre-Existing Licensees shall continue to have the right to use such TMA Trademarks and TMA Patents (as the case may be) according to the terms of the licenses so granted, provided that control of such Pre-Existing Licensees under such licenses shall be assumed by ASTRO as provided in Section 5.3 hereof. TMA represents and warrants that: (1) Schedule 4 contains a complete listing of all the Pre-Existing Licensees, (2) that TMA does not have any current or future ownership rights in any of the Pre-Existing Licensees, (3) that by entering into this Agreement with ASTRO, TMA will not be violating the terms of any other preexisting agreement with any third party, and (4) that TMA has produced copies of any and all such licensing agreements with Pre-Existing Licensees for review by ASTRO prior to execution of this Agreement by the Parties.

3

2.3    In certain limited circumstances, subject to ASTRO'S prior written approval and in ASTRO's sole discretion, ASTRO agrees to grant TMA and STR the right to use the ASTRO Trademarks in the marketing material of TMA and/or STR.

2.4    No other right or license is granted by either party hereto to the other party, either express or implied, with respect to any other trademark, trade name, service mark, or other intellectual property right owned, possessed or licensed by or to either party. Neither party shall use the trademarks or the patents of the other party in any manner not specifically authorized by this Agreement or in the Supply Agreement.

## 3.    Consideration.

3.1    The consideration for the licenses granted hereby is (i) the performance by the parties of their respective duties hereunder and (ii) the execution and delivery by ASTRO and STR of the Supply Agreement.

## 4.    Duties of TMA.

4.1    TMA shall inform ASTRO of current market and industry information available; provided, however, this covenant shall in no way obligate TMA to disclose to ASTRO trade secrets or confidential information of third parties entrusted to it and which TMA is prohibited from disclosing by law or contract.

4.2    TMA shall provide ASTRO with access to the database of current and former clients and customers (including mailing address, phone number and email address) for the purpose of assisting in the sales and marketing of Co-Branded Products; provided, however, nothing contained herein shall obligate TMA to disclose to ASTRO trade secrets or confidential information of third parties entrusted to it and which TMA is prohibited from disclosing by law or contract.

4.3    TMA shall share with ASTRO all new products and technologies developed by it relating to TMA Products; provided, however, nothing contained herein shall obligate TMA to disclose to ASTRO trade secret or confidential information of third parties entrusted to it and which TMA is prohibited from disclosing by law or contract.

4.4    Any new trademarks developed by TMA regarding TMA Products shall become subject to this Agreement and TMA shall prepare, execute and present to ASTRO for approval and execution an amendment to Schedule 3 adding each new trademark as a TMA Trademark.

4.5    With respect to the duties of ASTRO set forth in Sections 5.2, 5.6, 5.7 and 5.17 of this Agreement, all of which require the prior approval or consent of ASTRO, TMA shall provide ASTRO with a written response (email response is acceptable) to any request for consent or approval within five (5) business days of receipt by TMA of any such request from ASTRO.    If TMA fails to provide a response to ASTRO to any such request for consent or

approval within five (5) business days, then TMA's failure to respond shall be deemed an affirmative consent to or approval of the request from ASTRO.

4.6     TMA shall at all times during the Term of this Agreement maintain insurance coverage as follows: (1) Workers' Compensation insurance as prescribed by the applicable state law; (2) employer's liability insurance with limits of at least $500,000 for each occurrence; (3) automobile liability insurance if the use of motor vehicles is required, with limits of at least $1,000,000 combined single limit for bodily injury and property damage per occurrence; (4) Commercial General Liability ("CGL") insurance and Commercial Umbrella Liability Coverage ("Umbrella") with combined limits of at least $4,000,000 in the aggregate; CGL and Umbrella policies shall designate ASTRO, its affiliates, and its directors, officers and employees as additional insureds. Each such policy shall contain an express provision for an indemnity for ASTRO in respect of any claim covered by the policy made directly against ASTRO arising from acts, omissions, or defaults of TMA or its employees or agents in connection with the TMA Trademarks, TMA Patents or TMA Products that are the subject of this Agreement. Each such policy shall contain a provision requiring thirty (30) days advance notice to ASTRO prior to cancellation of or any change in the policy.  TMA shall on demand from time to time produce to ASTRO such evidence as ASTRO may reasonably require to show proof of the insurance required by this clause.

## 5.     Duties of ASTRO.

5.1     ASTRO shall carry out its obligations under this Agreement and act in relation to each TMA Product in a manner consistent with the reputation of each TMA Product, the TMA Trademarks and TMA.

5.2     ASTRO shall use its best efforts to diligently promote the Products for sale to the Sports Playing Fields and Tracks markets in the Territory.  All Products shall be marketed and sold by ASTRO as Co-Branded Products with the manner of usage of the TMA Trademarks and ASTRO Trademarks to be approved in advance by mutual agreement of the parties.

5.3     ASTRO shall at all times maintain a sales and marketing staff in the Territory; ASTRO shall manage a sales distribution channel, including evaluating, managing, training, and recruiting of independent sales representatives in the Territory to market and sell Co-Branded Products to the Sports Playing Fields and Tracks markets in the Territory.

5.4     ASTRO shall advise TMA in writing if ASTRO's Managers or officers at any time become aware of any materially adverse matters affecting the use, manufacture, sale, or installation of any of the Products in the Territory.  ASTRO shall periodically, as requested by TMA, report to TMA as to its sales and marketing efforts and provide to TMA copies of all agreements entered into by ASTRO in furtherance of its obligations under this Agreement.

5.5     ASTRO shall not incur any liability on behalf of TMA or in any way pledge or purport to pledge TMA's credit, or describe or hold itself out as an employee or partner of

TMA, or make any unauthorized representation about the TMA Products, the TMA Trademarks, or the TMA Patents.

5.6    Subject to TMA's compliance with its duties under Section 4.2 of this Agreement:

(a)    ASTRO shall work with TMA to develop an annual mutually agreeable program for the advertising of the Products to the Sports Playing Fields and Tracks markets in the Territory as contemplated by Section 4.2 and shall implement such plans as may be agreed upon; and

(b)    All of ASTRO's marketing efforts for Products to be sold to the Sports Playing Fields and Tracks markets in the Territory shall contain the TMA Trademarks including, without limitation, collateral materials, brochures, letterhead, sample boxes, submittals, websites, newsletters, press releases, direct mailings, and advertising.

5.7    ASTRO shall not advertise or distribute any printed matter referring to the Products in the Territory without the prior approval of TMA with regard to the form, manner, extent, and wording of such advertising and printed matter.

5.8    ASTRO shall not at any time hold itself out as, or represent that it is, the owner of any of the TMA Trademarks or the TMA Patents.

5.9    ASTRO shall not use advertising or promotional materials for the Co-Branded Products or the TMA Products outside of the Territory without the prior written consent of TMA.  Nothing in this Agreement shall preclude ASTRO from advertising, promoting or selling ASTRO Products outside the Territory without the prior written consent of TMA so long as, in any such instance, ASTRO used only the ASTRO Trademarks and the ASTRO Patents with respect to the advertising, promotion or sale of the ASTRO Products outside the Territory.

5.10    ASTRO shall be responsible for paying directly to any salesperson all automobile, lodging, meal, travel, and other expenses incurred by any salesperson in conjunction with performing any functions or duties on behalf of ASTRO.

5.11    ASTRO shall use all reasonable care in the marketing and sale of the Products in the Territory and insure that any installation of the Products in the Territory is carried out with all reasonable care and in accordance with this Agreement.

5.12    Unless otherwise approved by TMA in writing, ASTRO shall use the TMA Trademarks and the TMA Patents only in connection with the marketing and sale of Co-Branded Products that are sold as Products that fully meet the Specifications applicable to such Products as determined pursuant to the Supply Agreement and are not sold as off-quality or

6

inventory liquidations.

5.13    ASTRO shall, at its sole expense, take steps to secure and maintain registration of all ASTRO and TMA trademarks to the extent provided by law. ASTRO shall, at its sole expense , be responsible for protecting the TMA trademarks and patents and shall notify TMA of anyone in violation of those TMA  trademarks and patents.

5.14    ASTRO shall share with TMA all new products and technologies developed by it relating to ASTRO Products; provided, however, nothing contained herein shall obligate ASTRO to disclose to TMA trade secret or confidential information of third parties entrusted to it and which ASTRO is prohibited from disclosing by law or contract.

5.15    Any new trademarks developed by ASTRO regarding ASTRO Products shall become subject to this Agreement and ASTRO shall prepare, execute and present to TMA for approval and execution an amendment to Schedule 1 adding each new trademark as a ASTRO Trademark.

5.16    Except to the extent authorized in advance in writing by TMA, and except as otherwise provided below, ASTRO shall not during the Term of this Agreement:

> (a)    directly or indirectly, have a financial interest in any partnership, corporation, entity, or other person engaged in the manufacture, production, importation, sale, or distribution of any goods in the Territory which compete with one or more of the Products, and no employee, partner, director, or officer of ASTRO shall during the Term hold an executive, managerial, or advisory position with any such partnership, corporation, entity, or other person so engaged. Subject to the provisions of subsection 5.17(b) and (c) below, unless the parties agree in writing otherwise, during the Term, ASTRO shall not manufacture, distribute, or sell any goods that compete with one or more of the Products for distribution outside of the Territory.  ASTRO agrees that the remedy at law for a breach of this clause is inadequate and that in the event of a breach of this clause by ASTRO, TMA shall therefore be entitled to injunctive relief in order to enforce the terms and conditions of this clause.

> (b)    In the event at any time during the Term TMA undertakes to terminate an existing relationship with a third party for the license of TMA Trademarks and TMA Patents in connection with the sale of TMA Products to the Sports Playing Fields and Tracks markets in a Licensed Territory, then and in such event TMA shall offer to ASTRO a right of first refusal for a license for the TMA Trademarks and TMA Patents in

7

connection with the sale of TMA Products in such Licensed Territory. In such event, TMA must notify ASTRO of its desire to issue such a license in such Licensed Territory, and thereafter ASTRO and TMA shall negotiate with each other in good faith for a period of up to thirty (30) days to reach agreement concerning the terms and conditions under which TMA will be willing to license the TMA Trademarks and TMA Patents for use in connection with the sale of TMA Products to the Sports Playing Fields and Tracks markets in such Licensed Territory. If TMA and ASTRO are not able to reach such agreement within such thirty (30) day period, then (i) TMA will be free to negotiate such a license agreement with one or more third parties; and (ii) after a period of five (5) years starting from the end of such thirty (30) day period, ASTRO may manufacture, distribute, or sell goods that compete with one or more of the Products for distribution in such Licensed Territory. In no case, however, shall TMA be (i) required to terminate an existing license agreement in any Licensed Territory, (ii) restricted from renewing an existing license agreement in a Licensed Territory, or (iii) negotiating a new license agreement with an existing licensee in a Licensed Territory.

5.18    Notwithstanding any of the other terms and conditions set forth in this Agreement:

(a)    ASTRO shall have the right to sell athletic surfaces used for running, racing, or similar activity that are manufactured, produced, imported, sold, or distributed by companies other than TMA or its affiliates;

(b)    If STR is in breach or default of the Supply Agreement, until any such breach or default is cured by STR, ASTRO shall have the right (i) to advertise and promote the sale of the Co-Branded Products in the Territory and (ii) to enter into contracts with other entities engaged in the manufacture, production, importation, sale, or distribution of synthetic turf surfaces in the Territory for the purpose of manufacturing, producing and selling the Co-Branded Products in the Territory; and

(c)    ASTRO's use of the TMA Trademarks or promotion of the Co-Branded Products on the ASTRO website shall not be deemed to be advertising or promotion of the Co-Branded Products or use of the ASTRO Trademarks outside the Territory in violation of this Agreement.

6.    **Term.**

6.1    This Agreement shall commence on the date hereof and shall (subject to Sections

8

7 and 16) continue for a term ending on December 31, 2017 (the "Initial Term") unless renewed in accordance with Section 6.2 (the "Renewal Term") (the Initial Term and the Renewal Term may collectively be referred to herein as the "Term").

      6.2    Unless earlier terminated this Agreement will automatically renew for additional one-year terms after the expiration of the Initial Term unless either party gives notice in writing to the other of the intent of such party to terminate this Agreement as of the end of the Initial Term, given not less than two (2) years prior to the expiration of the Initial Term or sixty (60) days prior to the end of any Renewal Term thereafter, as the case may be. A review shall be held on a yearly basis on the performance of this Agreement.

## 7.    <u>Termination.</u>

      7.1    After the expiration of the first three (3) years of the Term, TMA shall have the right to terminate this Agreement immediately by notice in writing if the Supply Agreement terminates for any reason; provided, however, that if the Supply Agreement terminates during the first three (3) years of the Term of this Agreement: (i) ASTRO shall not sell any TMA Products except for products that are manufactured by STR; (ii) STR will continue to offer Most Favorable Terms to ASTRO as defined in Section 3.7 of the Supply Agreement; and (iii) if ASTRO purchases Products for resale under a TMA Trademark from a third party then, unless agreed otherwise, the Specifications for the Products so purchased shall not be modified and GSV will pay TMA a five percent (5%) royalty based on the gross sales of such Products by GSV.

      7.2    Either party shall have the right to terminate this Agreement immediately by notice in writing if the other party:

          (a)    materially breaches this Agreement and does not remedy the breach (if it is capable of remedy) within thirty (30) days of written notice of the breach;

          (b)    materially breaches this Agreement in the same manner on more than two (2) single occasions within any twelve (12) month period (whether or not such prior breaches have been remedied);

          (c)    (i) is dissolved; (ii) admits in writing its inability generally to pay its debts as they become due; (iii) makes a general assignment, arrangement or composition with or for the benefit of its creditors; (iv) institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for the winding-up or liquidation of such other party and, in the case of any such proceedings or petition instituted or presented against it, such proceedings or petition (1) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for the winding up or liquidation of such other party, or (2) is not

dismissed, discharged, stayed or restrained in each case within 90 days of the institution or presentation thereof; (v) has a resolution passed for the winding up or liquidation; (vi) seeks or becomes subject to the appointment of an administrator, receiver, trustee, custodian or other similar official for it or for all or substantially all its assets (regardless of how brief such appointment may be, or whether any other event described in this clause (vii) has occurred and is continuing); (viii) takes any action in furtherance of, or indicating its consent to, approval of or acquiescence in, any of the foregoing acts; or (ix) has any of its members, managers, officers, or directors convicted of a felony.

7.3    On termination of this Agreement whether by expiration of the Term or otherwise ASTRO shall:

(a)    discontinue all use of the TMA Trademarks and TMA Patents except for the purpose of:

(i)    completing any outstanding order(s) for the Products which ASTRO may demonstrate by written documentation were accepted prior to the date of termination; or

(ii)    completing any outstanding order(s) for the Products which ASTRO accepted after the date of termination where TMA has given ASTRO written consent to complete the order(s) subsequent to termination; and

(b)    return to TMA all promotional, technical, marketing, advertising, Product information, or other materials supplied by TMA to ASTRO.

## 8.    TMA Trademarks; TMA Patents.

8.1    ASTRO shall not use the TMA Trademarks in any manner which detracts from the goodwill and reputation of, or is an improper use of, the TMA Trademarks.

8.2    ASTRO shall:

(a)    Insure that whenever a TMA Trademark is used on or in relation to the Products, the TMA Trademark is always accompanied by the following wording and symbol(s), which shall be reasonably prominent:

(i)    "A [insert Trademark name] is a trademark owned by Textile Management Associates, Inc."

(ii)    Any logo associated with a TMA Trademark shall be included next to the Trademark.

(b)    not use any of the TMA Trademarks in relation to, or affix them to, any goods or services other than the Products in the Territory.

8.3    ASTRO shall not alter or add to any of the TMA Trademarks in relation to the Products and shall not use any of the TMA Trademarks as part of its name or the name of any entity associated with it except in connection with the co-branding of Products as provided in Section 5.2 without the prior written consent of TMA.

8.4    ASTRO shall not use any new mark or name that is a colorable imitation of or confusingly similar to any of the TMA Trademarks in respect of any goods or services. Likewise, TMA shall not use any new mark or name that is a colorable imitation of or confusingly similar to any of the ASTRO Trademarks in respect of any goods or services.

8.5    ASTRO shall not during the Term of this Agreement or at any time in the future register or use any of the TMA Trademarks in its own name. Likewise, TMA shall not during the Term of this Agreement or at any time in the future register or use any of the ASTRO Trademarks in its own name.

8.6    ASTRO acknowledges TMA's right, title, and interest in the TMA Trademarks and the TMA Patents as provided in this Agreement and corresponding goodwill and agrees not to challenge such right, title, or interest. All goodwill attaching to the TMA Trademarks and the TMA Patents generated by ASTRO's operations under this Agreement shall inure solely to the benefit of TMA. To the extent ASTRO obtains any interest in such goodwill, it shall only be as trustee for TMA and ASTRO shall on request by TMA execute all relevant documents for the transfer of any such goodwill to TMA. Likewise, TMA acknowledges ASTRO's right, title, and interest in the ASTRO Trademarks and the ASTRO Patents and corresponding goodwill and agrees not to challenge such right, title, or interest. All goodwill attaching to the ASTRO Trademarks and the ASTRO Patents generated as a result of this Agreement shall inure solely to the benefit of ASTRO. To the extent TMA obtains any interest in such goodwill, it shall only be as trustee for ASTRO and TMA shall on request by ASTRO execute all relevant documents for the transfer of any such goodwill to ASTRO.

8.7    ASTRO acknowledges that this Agreement shall not operate to vest any right, title, or interest in the TMA Trademarks or the TMA Patents in ASTRO. Likewise, TMA acknowledges that this Agreement shall not operate to vest any right, title, or interest in the ASTRO Trademarks or the ASTRO Patents in TMA.

8.8    ASTRO shall not, except with the prior written consent of TMA, make use of the name of TMA otherwise than is expressly permitted by this Agreement.

8.9    ASTRO shall on request by TMA supply TMA information as to ASTRO's use of the TMA Trademarks and/or TMA Patents in the Territory or wherever the TMA Trademarks or TMA Patents are used by ASTRO which TMA is required by law to furnish in order to protect the TMA Trademarks and the TMA Patents.

8.10    If, during the Term of this Agreement, ASTRO, individually or collectively, makes any improvements to the TMA Patents, then ASTRO shall communicate such improvements to TMA, TMA shall be the owner of any such improvements to the TMA Patents, and TMA shall have the right to include the same in this Agreement without additional compensation.

8.11    If, during the Term of this Agreement, ASTRO makes any improvements to the ASTRO Patents, or ASTRO discovers, develops or otherwise becomes the owner of any inventions, processes, uses, discoveries, methods or improvements to products falling within the definition of Sports Playing Fields and Tracks as set forth in this Agreement, then ASTRO shall be the owner of any such improvements to the ASTRO Patents and such inventions, processes, uses, discoveries, methods or improvements (except for improvements to the TMA Patents), ASTRO shall communicate such improvements to TMA, ASTRO shall have the right to include the same on Schedule 1A to this Agreement without additional compensation.

8.12    If, during the Term of this Agreement, ASTRO and TMA jointly discover or develop any inventions, processes, uses, discoveries, or methods, then ASTRO and TMA shall be co-owners of any such inventions, processes, uses, discoveries or methods, and ASTRO and TMA shall jointly file as co-owners any patent applications for any such inventions, processes, uses, discoveries or methods.

## 9.    **Infringements.**

9.1    If ASTRO's Managers or officers become aware of any use or proposed use of any of the TMA Trademarks or the TMA Patents by any third party, ASTRO shall promptly advise TMA of any such use or proposed use of any of the TMA Trademarks or the TMA Patents by any such third party.

9.2    If ASTRO's Managers or officers become aware of any allegation that any of the TMA Trademarks or the TMA Patents is invalid or that use of any of the TMA Trademarks or the TMA Patents infringes any rights of another party, ASTRO shall promptly call to the attention of TMA any such allegations.

9.3    TMA shall have the sole right to conduct and control all proceedings relating to any of the TMA Trademarks and the TMA Patents and shall in its sole discretion decide what action if any to take in respect of any infringement, or alleged infringement, passing off or alleged passing off of any of the TMA Trademarks in the Territory.

9.4    ASTRO shall, at the request of TMA, give full cooperation to TMA in any claim or proceeding for infringement or passing off, brought or threatened in the Territory.

9.5    The obligations of Section 9.3 and Section 9.4 shall survive any termination of this Agreement.

## 10.    **Indemnity.**

12

10.1   ASTRO shall be liable for and will indemnify TMA (including its officers, employees, and agents) against any and all liability, loss, damages, costs, legal costs, profession, and other expenses of any nature whatsoever incurred or suffered by TMA in the marketing, sale or installation of any of the Products by ASTRO or under ASTRO's supervision, except where liability, loss, and damage is as a result of materials and products supplied by TMA. This indemnification shall include without limitation:

(a)   any claim by a customer or third party arising out of, or in connection with, the negligence or other fault of ASTRO or its agents or employees in connection with services relating to a sale of the Products; and

(b)   any claim of any nature by an employee of ASTRO.

10.2   TMA shall be liable for and will indemnify ASTRO (including its officers, employees, and agents) against any and all liability, loss, damages, costs, legal costs, profession, and other expenses of any nature whatsoever incurred or suffered by ASTRO arising out of ASTRO's use of the TMA Products, the TMA Trademarks and the TMA Patents pursuant to this Agreement, except where liability, loss, and damage is as a result of the acts or omissions of ASTRO. This indemnification shall include without limitation:

(a)   any claim by a customer or third party arising out of, or in connection with, the negligence or other fault of TMA or its agents or employees in connection with products liability claims or intellectual property rights relating to the TMA Products, the TMA Trademarks or the TMA Patents; and

(b)   any claim of any nature by an employee of TMA.

10.3   The obligations of this Section 10 shall survive any termination of this Agreement.

**11.   Right of First Refusal.** If ASTRO desires to sell substantially all of ASTRO's assets, and any such sale is intended to be to any partnership, corporation, entity, person, or group of persons or entities that are not owners of any of the ownership shares or interest of ASTRO as of the date of this Agreement, then ASTRO shall, before binding itself to sell, notify TMA and STR of ASTRO's desire to make such a sale by written notice, which shall identify the prospective purchaser, and which shall state the exact price, terms and conditions of the contemplated sale (the "Bona Fide Offer"). After delivery of such written notice, ASTRO shall give TMA and STR thirty (30) days in which to determine whether TMA or STR wishes to exercise their right of first refusal option (the "Purchase Option") to purchase substantially all of ASTRO's assets for a price and on the same terms as the Bona Fide Offer or with equivalent fair market value if securities other than cash are involved in the proposed acquisition, which TMA or STR may do by giving notice in writing to ASTRO of exercise of the Purchase Option together with a non-refundable good faith deposit of five percent (5%) of the total purchase price within such thirty (30) day period. If TMA or STR exercises the Purchase

13

Option, TMA or STR must execute a purchase agreement with ASTRO with respect to the sale within sixty (60) days of the exercise of the Purchase Option.

**12.**    **Assignment; Sublicense.**

12.1    Anything herein to the contrary notwithstanding, ASTRO may not assign, transfer, delegate or sublicense (by operation of law or otherwise) this Agreement or any of its rights, privileges, licenses or obligations under this Agreement without the prior written consent of TMA, which TMA may withhold or condition, in its sole discretion, and any attempted assignment, transfer, sublicense or delegation by ASTRO shall be deemed to be null and void and of no force and effect.

12.2    TMA may assign or transfer (by operation of law or otherwise) this Agreement or any of its rights or obligations under this Agreement to any person or entity that controls, is controlled by, or is under common control with TMA.

**13.**    **Entire Agreement; No Waiver.**

13.1    This Agreement constitutes the entire agreement and understanding of the parties and supersedes all prior oral or written agreements, understandings, or arrangements between them relating to the subject matter of this Agreement. Any and all rights, representations, or duties, whether express or implied under any law or statute of any country or otherwise, which are not expressly contained in this Agreement are hereby expressly excluded and shall not therefore give rise to any duty or liability on the part of ASTRO or TMA. No amendment or modification of any term or condition of this Agreement shall be valid or of any force or effect unless made by written instrument signed by the respective duly authorized agents of TMA and ASTRO, specifying the exact nature of such amendment or modification.

13.2    No failure or delay on the part of either of the parties to operate any right or remedy under this Agreement shall be construed or operate as a waiver thereof nor shall any single or partial exercise of any right or remedy preclude the further exercise of such right or remedy as the case may be. The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights or remedies provided by law.

**14.**    **Confidentiality.**

14.1    ASTRO agrees to keep confidential and not to use or disclose to others during or subsequent to the Term of this Agreement, except as is necessary in the proper performance of its duties under this Agreement or as required by law, any information regarding the TMA Products, the TMA Trademarks, the TMA Patents, plans, programs, plants, processes, products, equipment, operations, finances, suppliers, or customers of TMA which ASTRO may obtain or have access to during the Term of this Agreement, without in each instance securing the prior written consent of TMA, and ASTRO shall cause its employees, partners, agents, representatives, officers, and directors to observe the foregoing. The parties agree that the remedy of law is inadequate, and that, TMA therefore shall be entitled to injunctive relief in order to enforce the terms and conditions of this Section 14.

14

14.2   TMA agrees to keep confidential and not to use or disclose to others during or subsequent to the Term of this Agreement, except as is necessary in the proper performance of its duties under this Agreement or as required by law, any information regarding the ASTRO Products, the ASTRO Trademarks, the ASTRO Patents, plans, programs, plants, processes, products, equipment, operations, finances, suppliers, or customers of ASTRO which TMA may obtain or have access to during the Term of this Agreement, without in each instance securing the prior written consent of ASTRO, and TMA shall cause its employees, partners, agents, representatives, officers, and directors to observe the foregoing.   The parties agree that the remedy of law is inadequate, and that, ASTRO therefore shall be entitled to injunctive relief in order to enforce the terms and conditions of this Section 14.

14.3   The obligations of this Section 14 shall survive any termination of this Agreement.

## 15.   <u>Illegality.</u>

15.1   In the event any term or provision of this Agreement is declared or becomes illegal, invalid, or unenforceable for any reason whatsoever, such term or provision shall be divisible from this Agreement and shall be deemed to be deleted from this Agreement provided always that if such deletion substantially affects or alters the commercial basis of this Agreement, the parties shall negotiate in good faith to amend and modify the terms and provisions of this Agreement to carry out the commercial purpose of this Agreement.

15.2   ASTRO agrees that it will neither undertake nor cause to be undertaken in performing its obligations under this Agreement any activity which is illegal under the laws of the Territory or any political subdivision within the Territory or anywhere else it may use the TMA Trademarks pursuant to this Agreement.

## 16.   <u>Notices.</u>

16.1   Any notice or other communication given under this Agreement shall be in writing and shall be deemed to have been duly given when delivered personally or by telecopier (provided a successful transmission report is received and a confirmation copy is sent by registered airmail) to the parties at the following addresses (or at such other address as has been specified by like notice):

If to TMA:

Textile Management Associates, Inc.
1906 South Hamilton Street
Dalton, Georgia 30720

If to ASTRO:

15

Astroturf LLC
1906 S Hamilton St
Dalton GA 30720
ATTN: Bryan Peeples

## 17.    Force Majeure.

17.1    If either party is prevented or delayed from or in performing any of its obligations under this Agreement by any event beyond its reasonable control, and which is of a nature which it does not have the authority or power to remedy, including without limitation, labor disturbances, fires, floods, epidemics, wars, and riots, then its obligations shall be suspended for as long as the event continues, provided written notice of the event is immediately given to the other party and it uses all reasonable effort to mitigate the effects of the event on performance of its obligations under this Agreement.

17.2    If the event continues for more than three (3) months, either party may terminate this Agreement by giving the other not less than thirty (30) days written notice.

## 18.    Governing Law.

18.1    This Agreement shall be governed for all purposes by and construed in accordance with the laws of the State of Georgia, USA.

## 19.    Miscellaneous.

19.1    In the event of litigation pertaining to this Agreement, the exclusive forum, venue and place of jurisdiction shall be in the courts in the State of Georgia unless otherwise designated in writing by the Parties or otherwise required by law.

19.2    This Agreement was the subject of negotiation between the Parties and shall not be construed against either as the drafter thereof. The failure of either Party to insist upon strict compliance with any provision of this Agreement or the failure to assert any right such Party may have under this Agreement shall not be deemed to be a waiver of such provision or right or any other provision or right of this Agreement.

19.3    The subject headings contained in this Agreement are included for purposes of convenience only and shall not affect the construction or interpretation of any of its provisions.

IN WITNESS WHEREOF, each of the parties has caused this Agreement to be executed in duplicate as of the day and year first above written by a respective officer thereunto duly authorized.

Textile Management Associates, Inc.

By: _____

Name: _Tom Peeples_____

Title: _President_____

Astroturf , LLC

By: _____

Name: _Bryan Peeples_____

Title: _President_____

17

Schedule 1

To License Agreement

None.

Schedule 2

To License Agreement

Patents:

| Title | Country | Patent/ Application No. | Filing Date | Expiration Date |
|-------|---------|------------------------|-------------|-----------------|
| Artificial Turf System | Australia | Patent No. 2001,238,195 | 2/13/2001 | |
| Horizontally Draining, Pre-Engineered Synthetic Turf Field | Canada | Patent No. 2,440,483 | 2/12/2002 | |
| Artificial Turf System | Canada | Patent No. 2,400,009 | 8/22/2006 | |
| System And Method For Storage And Temporary Installation Of Secondary Flooring Surface (Magic Carpet) | Canada | Application No. 2,737,611 | 9/18/2009 | |
| Method Of Recycling Synthetic Turf And Infill Product | Canada | Patent No. 2,747,152 | 12/15/2009 | |
| Turf Testing Apparatus And Methods | Canada | Application No. 2,837,337 | 5/24/2012 | |
| System And Method For Storage And Temporary Installation Of Secondary Flooring Surface (Magic Carpet) | Hong Kong | Patent No. 1,162,624 | 3/27/2012 | |
| Artificial Turf System | Mexico | Patent No. 246,123 | 2/13/2001 | |
| Method And Apparatus For Manipulating Large Section Of Artificial Turf | United States | Patent No. 6,070,824 | 9/12/1997 | |
| Filled Synthetic Grass | United States | Patent No. 6,299,959 | 9/10/1999 | |
| Artificial Turf System | United States | Patent No. 6,491,991 | 1/18/2001 | |
| Horizontally Draining, Pre-Engineered Synthetic Turf Field | United States | Patent No. 6,858,272 | 3/14/2001 | |
| Method And Apparatus For Pre-Fabricating A Synthetic Sports Field | United States | Patent No. 8,123,880 | 2/9/2009 | |
| System And Method For Storage And Temporary Installation Of Secondary Flooring Surface (Magic Carpet) | United States | Patent No. 8,152,088 | 9/18/2009 | |
| Method Of Recycling Synthetic Turf And Infill Product | United States | Patent No. 9,011,740 | 12/15/2009 | |
| Golf Mat | United States | Patent No. 7,955,194 | 12/28/2009 | |

14555075v1  21223-0003

| Title | Country | Patent/ Application No. | Filing Date | Expiration Date |
|---|---|---|---|---|
| System And Method For Storage And Temporary Installation Of Secondary Flooring Surface (Astrotrak) | United States | Patent No. 8,215,577 | 2/5/2010 | |
| Method And Apparatus For Pre-Fabricating A Synthetic Sports Field | United States | Patent No. 8,404,068 | 1/20/2012 | |
| System And Method For Storage And Temporary Installation Of Secondary Flooring Surface (Magic Carpet) | United States | Patent No. 8,403,249 | 3/7/2012 | |
| Turf Testing Apparatus And Methods | United States | Application No. 13/479,565 | 5/24/2012 | |
| Method of Recycling Synthetic Turf | United States | Application No. 13/672,227 | 11/8/2012 | |
| Method and Apparatus For Pre-Fabricating a Synthetic Sports Field | United States | Patent No. 9,028,637 | 2/26/2013 | |
| System And Method For Storage And Temporary Installation Of Secondary Flooring Surface (Astrotrak) | United States | Patent No. 8,403,248 | 3/26/2013 | |
| Method and Apparatus for Purifying and Recycling Synthetic Turf | United States | Application No. 14/250,209 | 4/10/2014 | |
| Method of Recycling Synthetic Turf and Infill Product | United States | Application No. 14/664,102 | 3/20/2015 | |
| Method and Apparatus For Pre-Fabricating a Synthetic Sports Field | United States | Application No. 14/680,142 | 4/7/2015 | |
| Recycled Synthetic Turf and Infill Product | United States | Application No. 14/751,242 | 6/26/2015 | |

Schedule 3

To License Agreement

Trademarks:

| Title/Trademark | Country | Application No. | Filing Date | Registration No. | Registration Date |
|---|---|---|---|---|---|
| ASTROCOURT (class 27, 37) | United States | 76/305,285 | 8/27/2001 | 2,558,853 | 4/9/2002 |
| ASTROTURF (class 22, 27) | Algeria | 27390 | 12/18/1996 | 52023 | 12/18/1996 |
| ASTROGRASS | Argentina | 2044386 | 8/13/1996 | 2224533 | 4/11/2008 |
| ASTROTURF (class 27) | Argentina | 1493208 | 7/3/1985 | 2241825 | 8/4/2008 |
| ASTROGRASS | Australia | 236859 | 3/2/1970 | 236859 | 3/2/1970 |
| ASTROPLAY | Australia | 862381 | 1/8/2001 | 862381 | 9/24/2001 |
| ASTROTURF (class 22) | Australia | 219860 | 6/17/1968 | 219860 | 6/17/1968 |
| ASTROTURF (class 27) | Australia | 207686 | 1/25/1967 | 207686 | 1/25/1967 |
| GRASS ZONE | Australia | 862171 | 1/4/2001 | 862171 | 9/24/2001 |
| NEXTURF | Australia | 862170 | 1/4/2001 | 862170 | 9/24/2001 |
| ROOT ZONE | Australia | 854943 | 10/25/2000 | 854943 | 8/20/2001 |
| ASTROTURF (classes 39, 41) | Austria | AM 194/67 | 1/26/1967 | 60255 | 9/8/1967 |
| ASTROTURF (classes 9, 14, 15, 35) | Austria | AM 1559/68 | 7/1/1968 | 63067 | 11/14/1968 |
| ASTROTURF | Benelux | 5454 | 6/3/1971 | 37647 | 6/3/1971 |
| ASTROGRASS | Brazil | 819465933 | 9/5/1996 | 819465933 | 4/6/1999 |
| ASTROTURF (class 16) | Brazil | 7573286 | 1/25/1990 | 7573286 | 1/25/1990 |
| ASTROTURF (class 23) | Brazil | 7055927 | 1/25/1980 | 7055927 | 1/25/1980 |
| ASTROTURF (class 27) | Brazil | 7055935 | 1/25/1980 | 7055935 | 1/25/1980 |
| ASTROTURF (class 27) | Bulgaria | 37582 | 3/10/1997 | 32023 | 11/18/1997 |
| ASTROCOURT (class 27) | Canada | 1,116,766 | 9/26/2001 | 583,386 | 6/10/2003 |
| ASTROGRASS | Canada | 330418 | 2/23/1970 | 175496 | 4/8/1971 |
| ASTROPLAY | Canada | 1089808 | 1/19/2001 | 570723 | 11/14/2002 |
| ASTROTURF | Canada | 301278 | 12/5/1966 | 156011 | 3/15/1968 |
| ASTROTURF (Stylized) (class 22) | Canada | 310,580 | 1/29/1968 | 164,294 | 8/1/1969 |
| GRASS ZONE | Canada | 1089601 | 1/17/2001 | 578549 | 3/31/2003 |

| Title/Trademark | Country | Application No. | Filing Date | Registration No. | Registration Date |
|---|---|---|---|---|---|
| NEXTURF | Canada | 1079166 | 10/18/2000 | 575055 | 2/5/2003 |
| PEXLON | Canada | 1089807 | 1/19/2001 | 578776 | 4/2/2003 |
| ROOT ZONE | Canada | 1089600 | 1/17/2001 | 576374 | 2/25/2003 |
| ASTROGRASS | Chile | 358048 | 10/15/1996 | 800849 | 7/14/1997 |
| ASTROTURF | Chile | 601513 | | 680826 | 12/12/2003 |
| ASTROCOURT (class 27) | China | 200600550 | 4/29/2003 | 3543974 | 1/7/2005 |
| ASTROGRASS | China | 9800099901 | 9/1/1998 | 1395811 | 5/14/2000 |
| ASTROPLAY | China | 3001282 | 10/22/2001 | 3001282 | 12/21/2002 |
| ASTROTURF (class 25) | China | 6335362 | 10/22/2007 | 6335362 | 5/28/2010 |
| ASTROTURF (class 27) | China | 204056 | 1/30/1994 | 204056 | 1/30/1994 |
| ASTROTURF (class 37) | China | 6335361 | 10/22/2007 | 6335361 | 3/28/2010 |
| ASTROTURF (in Chinese characters) (class 25) | China | 6335366 | 10/22/2007 | 6335366 | 4/14/2010 |
| ASTROTURF (in Chinese characters) (class 37) | China | 6335364 | 10/22/2007 | 6335364 | |
| NEXTURF | China | 3001283 | 10/22/2001 | 3001283 | 12/21/2002 |
| ROOT ZONE | China | 3001281 | 10/22/2001 | 3001281 | 12/21/2002 |
| STADIATURF | China | 3544010 | 4/29/2003 | 3544010 | 1/26/2005 |
| ASTROTURF | Croatia | Z970203A | 2/19/1997 | Z970203 | 3/5/1998 |
| ASTROTURF (classes 22, 27, 37) | CTM | 11497013 | 1/17/2013 | 11497013 | 6/13/2013 |
| ASTROTURF (class 27) | Curacao | D1472 | 4/14/1983 | 1442 | 4/14/1983 |
| ASTROGRASS | Cyprus | 63707 | 8/2/2002 | 63707 | 6/6/2006 |
| ASTROTURF & Design (class 27) | Cyprus | 63,708 | 8/2/2002 | 63,708 | 6/6/2006 |
| ASTROTURF (class 27) | Czech Republic | 50692 | 7/7/1978 | 164157 | 7/7/1978 |
| ASTROGRASS | Denmark | VA199605452 | 10/8/1996 | VR199701868 | 4/5/1997 |
| ASTROTURF (classes 20, 24, 27) | Denmark | VA199604754 | 12/19/1996 | VR196701312 | 4/28/1967 |
| ASTROTURF (classes 7, 8, 20, 22, 24, 25, 28, 31) | Denmark | VA196802296 | 6/17/1968 | VR197001354 | 4/17/1970 |
| ASTROGRASS | Egypt | 102596 | 8/12/1996 | 102596 | 9/30/2001 |
| ASTROTURF (class 27) | Egypt | 54794 | 8/7/1978 | 54794 | 8/7/1978 |
| ASTROGRASS | European Union | 1210103 | 6/17/1999 | 1210103 | 11/27/2000 |

| Title/Trademark | Country | Application No. | Filing Date | Registration No. | Registration Date |
|---|---|---|---|---|---|
| ASTROPLAY | European Union | 11497013 | 1/8/2001 | 2030369 | 4/4/2002 |
| GRASS ZONE | European Union | 2028215 | 1/4/2001 | 2028215 | 3/31/2003 |
| NEXTURF | European Union | 1784438 | 7/31/2000 | 1784438 | 8/3/2001 |
| ROOT ZONE | European Union | 2019289 | 12/27/2000 | 2019289 | 4/12/2002 |
| ASTROGRASS (class 27) | Finland | 964553 | 11/4/1996 | 206959 | 7/31/1997 |
| ASTROTURF (class 27) | Finland | 77628 | 7/13/1978 | 77628 | 5/20/1981 |
| ASTROTURF (classes 6, 17, 19, 24, 27) | France | 816791 | 10/2/1986 | 1373078 | 10/2/1986 |
| ASTROTURF (classes 7, 8, 20, 22, 23, 25, 28, 31) | France | 921089 | 4/18/1988 | 1461315 | 4/18/1988 |
| ASTROTURF | Germany | M26337 | 7/4/1966 | 831032 | 3/20/1967 |
| ASTROTURF & Design (class 19, 27) | Germany | A47403 | 12/19/1989 | 1154915 | 2/23/1990 |
| ASTROTURF (class 22) | Germany | M29785 | 7/10/1968 | 911023 | 10/23/1973 |
| ASTROTURF (class 27) | Germany | M29785 | 7/10/1968 | 911023 | 10/23/1973 |
| ASTROGRASS | Greece | 130955 | 10/11/1996 | 130955 | 11/17/1998 |
| ASTROTURF | Greece | 39756 | 6/15/1968 | 39756 | 6/15/1968 |
| ASTROTURF (class 27) | Greece | 36748 | 1/9/1967 | 36748 | 1/9/1968 |
| ASTROGRASS | Hong Kong | 199800797 | 8/14/1996 | 199800797 | 1/22/1998 |
| ASTROTURF (class 27) | Hong Kong | 21701981 | 8/6/1981 | 19821717 | 8/6/1981 |
| ASTROTURF (class 27) | Hungary | M9700180 | 1/22/1997 | 152215 | 5/25/1998 |
| ASTROGRASS | Iceland | 9681996 | 8/12/1996 | 1371997 | 2/18/1997 |
| ASTROTURF (class 27) | Iceland | 1361997 | 2/18/1997 | 1361997 | 2/18/1997 |
| ASTROTURF (class 27) | India | 339135 | 7/29/1978 | 339135 | 7/29/1978 |
| ASTROTURF | Indonesia | IDM000150160 | 6/2/1997 | IDM000150160 | 4/15/1998 |
| ASTROTURF (class 27) | Iran | 50179 | 8/8/1978 | 50179 | 8/8/1978 |
| ASTROGRASS | Ireland | 833256 | 12/21/1998 | 833256 | 12/21/1998 |
| ASTROTURF | Ireland | 90609 | 12/20/1976 | 90609 | 12/20/1976 |
| ASTROGRASS | Israel | 31782 | 3/18/1970 | 31782 | 2/1/1972 |
| ASTROTURF (class 22) | Israel | 28795 | 6/21/1968 | 28795 | 9/22/1970 |
| ASTROGRASS | Italy | 38554C90 | 2/21/1990 | 595459 | 4/22/1993 |
| ASTROTURF (classes 6, 17, 19, 24, 27) | Italy | 33959C76 | 5/21/1976 | 339557 | 2/4/1985 |

| Title/Trademark | Country | Application No. | Filing Date | Registration No. | Registration Date |
|---|---|---|---|---|---|
| ASTROTURF (classes 6, 17, 19, 24, 27) | Italy | 36474C86 | 12/14/1966 | 3401 | 12/14/2006 |
| ASTROTURF (classes 7, 20, 22, 25, 28) | Italy | 39423C89 | 4/18/1989 | 569372 | 5/8/1992 |
| ASTROPLAY | Japan | 2001000510 | 1/9/2001 | 4524725 | 11/22/2001 |
| ASTROTURF (class 25) | Japan | 7555987 | 7/2/1987 | 2168418 | 9/29/1989 |
| ASTROTURF (classes 22, 24, 27) | Japan | 21042178 | 10/8/1968 | 794809 | 10/8/1968 |
| ASTROTURF (in Katakana) | Japan | 5046378 | 7/7/1978 | 2246132 | 11/4/2010 |
| ASTROTURF GREEN (in Roman and Katakana) | Japan | 5138681 | 6/18/1981 | 2349449 | 11/29/1991 |
| GRASS ZONE | Japan | 2001000232 | 1/5/2001 | 4524723 | 11/22/2001 |
| NEXTURF | Japan | 2000083488 | 7/28/2000 | 4477319 | 5/25/2001 |
| ROOT ZONE | Japan | 2000138897 | 12/25/2000 | 4520863 | 11/9/2001 |
| ASTROGRASS | Korea, South | 19970032922 | 7/15/1997 | 421394 | 9/15/1998 |
| ASTROGRASS | Korea, South | 19970032923 | 7/15/1997 | 40457421 | 10/25/1999 |
| ASTROTURF | Korea, South | 19840007441 | 5/17/1984 | 109773 | 2/2/1985 |
| ASTROTURF (class 27) | Korea, South | 19780005162 | 7/14/1978 | 40-62006 | 6/14/1979 |
| ASTROGRASS | Liechtenstein | 12471 | 12471 | 3/4/2002 | 3/4/2002 |
| ASTROTURF (class 27) | European Union | 3537107 | 11/12/2003 | 3537107 | 3/30/2005 |
| ASTROGRASS | Malaysia | 9601278 | 2/2/1996 | 96001278 | 2/2/1996 |
| ASTROTURF (class 25) | Malaysia | MA318787 | 7/23/1987 | 87003187 | 7/23/1987 |
| ASTROTURF (class 27) | Malaysia | 79328 | 7/24/1978 | M079328 | 7/24/1978 |
| ASTROTURF (class 27) | Malaysia | S033064 | 8/30/1983 | S033064 | 8/30/1983 |
| ASTROGRASS | Mexico | 275993 | 10/4/1996 | 534778 | 10/28/1996 |
| ASTROPLAY | Mexico | 514369 | 10/30/2001 | 728372 | 12/13/2001 |
| ASTROTURF (class 27) | Mexico | 111942 | 4/30/1991 | 418109 | 7/8/1992 |
| NEXTURF | Mexico | 521679 | 12/5/2001 | 750989 | 750989 |
| ROOT ZONE | Mexico | 514371 | 10/30/2001 | 728374 | 12/13/2001 |
| ASTROGRASS | Monaco | 1329545 | 1/11/2013 | 1329545 | 2/22/2013 |
| ASTROTURF (class 27) | Morocco | 28597 | 7/27/1978 | 65176 | 7/27/1978 |
| ASTROTURF | New Guinea | A3799R | 9/15/1975 | A3799R | 9/16/1975 |
| ASTROPLAY | New Zealand | 630450 | 1/8/2001 | 630450 | 7/12/2001 |
| ASTROTURF (class 19) | New Zealand | 142555 | 6/2/1982 | 142555 | 8/18/1988 |

| Title/Trademark | Country | Application No. | Filing Date | Registration No. | Registration Date |
|---|---|---|---|---|---|
| ASTROTURF (class 27) | New Zealand | 151194 | 2/14/1984 | 151194 | 9/29/1988 |
| GRASS ZONE | New Zealand | 630335 | 1/15/2001 | 630335 | 7/5/2001 |
| NEXTURF | New Zealand | 630336 | 1/5/2001 | 630336 | 1/5/2001 |
| ROOT ZONE | New Zealand | 626463 | 11/2/2000 | 626463 | 5/13/2002 |
| ASTROGRASS | Norway | 964786 | 8/12/1996 | 186630 | 11/20/1997 |
| ASTROTURF (class 20, 22, 24, 25, 28) | Norway | 96409 | 1/15/1968 | 75970 | 1/30/1969 |
| ASTROTURF (class 27) | Norway | 91217 | 12/6/1966 | 72582 | 9/7/1967 |
| GRASS ZONE | Norway | 200100630 | 1/11/2001 | 212478 | 12/27/2001 |
| NEXTURF | Norway | 200100631 | 1/11/2001 | 211000 | 10/11/2001 |
| ROOT ZONE | Norway | 200100021 | 1/2/2001 | 211860 | 11/22/2001 |
| ASTROTURF | Pakistan | 67835 | 7/30/1978 | 67835 | 7/30/1978 |
| ASTROTURF | Poland | Z77646 | 7/21/1978 | 56877 | 7/21/1978 |
| ASTROTURF (class 17) | Portugal | 151038 | 9/23/1968 | 151038 | 1/10/1970 |
| ASTROTURF (class 27) | Portugal | 144615 | 11/4/1968 | 144615 | 11/4/1968 |
| ASTROTURF | Romania | 42921 | 3/10/1997 | 28805 | 3/10/1997 |
| ASTROGRASS | Russia | 2002722965 | 10/16/2002 | 257509 | 10/22/2003 |
| ASTROPLAY | Russia | 2002722964 | 10/16/2002 | 255719 | 9/18/2003 |
| ASTROTURF | Russia | 83847 | 7/11/1978 | 63505 | 2/19/1979 |
| NEXTURF | Russia | 2002722966 | 10/16/2002 | 257510 | 10/22/2003 |
| ASTROGRASS | Saudi Arabia | 35505 | 9/1/1996 | 42174 | 12/21/1997 |
| ASTROTURF | Saudi Arabia | 35504 | 9/1/1996 | 42173 | 12/21/1997 |
| ASTROGRASS | Singapore | 851198 | 8/25/1998 | T9808511Z | 8/25/1998 |
| ASTROTURF | Singapore | 76658 | 7/18/1978 | T7876658H | 7/18/1978 |
| ASTROTURF (class 27) | Slovakia | 50692 | 7/7/1978 | 164157 | 7/7/1978 |
| ASTROTURF | Slovenia | 9770360 | 3/5/1997 | 9770360 | 1/29/1998 |
| ASTROGRASS | South Africa | 9610910 | 8/12/1996 | 9610910 | 6/1/1999 |
| ASTROTURF | South Africa | 810420 | 1/22/1981 | 810420 | 1/22/1981 |
| ASTROTURF | South Africa | 843626 | 4/18/1984 | 843626 | 4/18/1984 |
| ASTROTURF (class 22) | Spain | 566231 | 7/9/1968 | 566231 | 3/2/1971 |
| ASTROTURF (class 27) | Spain | 520703 | 12/24/1966 | 520703 | 12/24/1966 |
| ASTROTURF | St. Maarten | SVD-13212 | 4/14/1983 | 1264 | 4/14/1983 |
| ASTROTURF | Sweden | 520866 | 6/12/1966 | 120210 | 6/30/1967 |
| ASTROGRASS | Switzerland | 380116 | 2/12/1990 | 380116 | 2/12/1990 |

| Title/Trademark | Country | Application No. | Filing Date | Registration No. | Registration Date |
|---|---|---|---|---|---|
| ASTROTURF | Switzerland | 369179 | 7/28/1998 | 369179 | 7/28/1998 |
| ASTROTURF | Taiwan | 85026207 | 5/30/1996 | 738250 | 12/1/1996 |
| ASTROGRASS | Thailand | 370547 | 9/28/1998 | Kor95600 | 7/22/1999 |
| ASTROTURF | Thailand | 329226 | 2/28/1997 | Kor85434 | 12/14/2006 |
| ASTROGRASS | Turkey | 20025694 | 3/19/2002 | 200205694 | 6/17/2003 |
| ASTROTURF | Turkey | 98/012767 | 9/15/1998 | 205045 | 12/17/1999 |
| ASTROTURF & Design (classes 17, 27, 28) | Turkey | 98/005531 | 5/6/1998 | 199,868 | 8/20/1999 |
| ASTROTURF | Ukraine | 97030632 | 3/7/1997 | 19712 | 6/15/2001 |
| ASTROGRASS | United Kingdom | 955903 | 2/26/1970 | 955903 | 10/15/1971 |
| ASTROTURF (class 22) | United Kingdom | 926797 | 6/18/1968 | 926797 | 2/10/1969 |
| ASTROTURF (class 27) | United Kingdom | 902750 | 12/8/1966 | 902750 | 10/30/1967 |
| ASTROTURF & Design (classes 17, 37) | United States | 73,781,686 | 2/21/1989 | 1,560,910 | 10/17/1989 |
| ASTROTURF & Design (class 25) | United States | 73/663,652 | 5/27/1987 | 1,471,504 | 1/5/1988 |
| ASTROTURF (class 25) | United States | 73/663,653 | 5/27/1987 | 1,471,505 | 1/5/1988 |
| ASTROTURF & Design (class 25) | United States | 73/663,654 | 5/27/1987 | 1,471,506 | 1/5/1988 |
| ASTROGRASS (Stylized) (class 27) | United States | 74/622,620 | 1/18/1995 | 1,933,320 | 11/7/1995 |
| ASTROHOPPER | United States | 76/350,473 | 12/14/2001 | 2,731,382 | 7/1/2003 |
| ASTROLAWN | United States | 76/301,535 | 8/20/2001 | 2,538,353 | 2/12/2002 |
| ASTROPLAY  (class 27) | United States | 75/468,004 | 4/14/1998 | 2,369,221 | 7/18/2000 |
| ASTROSHIELD (class 5) | United States | 78/692,845 | 8/15/2005 | 3,126,447 | 8/8/2006 |
| ASTROTURF (class 1 & 24) | United States | 72/241,216 | 3/17/1966 | 830,657 | 6/20/1967 |
| ASTROTURF (class 22) | United States | 72/286,166 | 12/4/1967 | 864,757 | 2/18/1969 |
| ASTROTURF (class 27 & 28) | United States | 74/442,040 | 9/29/1993 | 1,930,544 | 10/31/1995 |
| E-LAYER | United States | 74/074,779 | 7/2/1990 | 1,646,033 | 5/28/1991 |
| FRINGETURF (Classes 27, 28) | United States | 76/118,579 | 8/29/2000 | 2,723,075 | 6/10/2003 |

| Title/Trademark | Country | Application No. | Filing Date | Registration No. | Registration Date |
|---|---|---|---|---|---|
| MAGIC CARPET (Class 007) | United States | 76/339,998 | 11/20/2001 | 2,674,503 | 1/14/2003 |
| NEXTURF (Class 27) | United States | 76/109,459 | 8/15/2000 | 2,551,139 | 3/19/2002 |
| NO MOW, NO GROW, NO H20! | United States | 76/336,399 | 11/9/2001 | 2,692,454 | 3/4/2003 |
| OUR GRASS IS ALWAYS GREENER | United States | 76/323,398 | 10/10/2001 | 2,624,630 | 9/24/2002 |
| PERMATUFT | United States | 75/794,389 | 9/8/1999 | 2,556,754 | 4/2/2002 |
| POLYNIT | United States | 74/045,088 | 4/2/1990 | 1,629,263 | 12/25/1990 |
| PUREGRASS | United States | 78/334,562 | 12/1/2003 | 3,107,607 | 6/20/2006 |
| ROOT ZONE (class 27) | United States | 76/171,488 | 11/27/2000 | 2,539,897 | 2/19/2002 |
| STADIA TURF (Supplemental) | United States | 74/257,760 | 3/23/1992 | 1,897,205 | 5/30/1995 |
| THATCH ZONE | United States | 76/131,040 | 9/19/2000 | 2,605,617 | 8/6/2002 |
| THE FIRST NAME IN TURF | United States | 85/772,861 | 11/6/2012 | 4,621,702 | 10/14/2014 |
| ULTRAMAT (Class 27) | United States | 78/186,070 | 11/18/2002 | 2,769,328 | 9/30/2003 |
| ASTROTURF (class 17) | Venezuela | 1000293 | 6/2/1993 | 185071 | 2/9/1996 |
| ASTROTURF (class 22) | Venezuela | 10001-93 | 6/2/1993 | 178763 | 7/10/1995 |
| ASTROTURF (class 27) | Venezuela | | | 96811-F | 1/20/1981 |
| ASTROTURF (class 27) | Venezuela | | | 100451-F | 8/26/1982 |
| ASTROTURF (class 27) | Venezuela | 10000-93 | 6/2/1993 | 178762 | 7/10/1995 |