UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| ASTROTURF, LLC ) | Case No. 16-41504 |
| ) | |
| Debtor ) | Related Docket Nos. 18 and 33 |
| ) | |
| ) | |

**FIELDTURF USA, INC.'S LIMITED OBJECTION TO DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING FROM TEXTILE MANAGEMENT ASSOCIATES, INC., PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) SCHEDULING A FINAL HEARING ON THE DEBTOR'S MOTION TO INCUR SUCH FINANCING ON A PERMANENT BASIS AND APPROVING THE FORM AND METHOD OF NOTICE THEREOF**

FieldTurf USA, Inc. ("FieldTurf") hereby objects to AstroTurf, LLC's (the "Debtor") emergency motion pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 for interim and final orders (i) authorizing the Debtor to obtain post-petition financing from Textile Management Associates, Inc., pursuant to section 364 of the bankruptcy code; (ii) granting liens and super-priority claims; (iii) modifying the automatic stay; and (iv) scheduling a final hearing on the Debtor's motion to incur such financing on a permanent basis and approving the form and method of notice thereof (the "DIP Motion") [Docket No. 18]. In support of its Objection, FieldTurf respectfully states as follows:

**PRELIMINARY STATEMENT**

1.      The proposed DIP Lender is the Debtor's 98% equity owner, Textile Management Associates, Inc. ("TMA"). As the equity owner, TMA caused the Debtor to file this case for illegitimate purposes: to effectuate a sale of the Debtor's assets for its own exclusive benefit, and

CHI:3013045.6

in an effort to avoid having to pay damages of no less than $30,000,000 owed to FieldTurf as a result of the Debtor's years-long willful infringement of a FieldTurf patent.

2. That $30 million in damages was assessed by a unanimous jury in October 2015 following a lengthy trial in Detroit, for patent infringement dating back to 2004. *See FieldTurf USA, Inc. et al. v. AstroTurf LLC*, No. 10-12492 (E.D. MI). FieldTurf has asked the District Court to treble that amount to $90,000,000 as is allowed by 35 U.S.C. § 285. On top of that, the District Court has proposed awarding over $8,000,000 in prejudgment interest, and FieldTurf intends to seek the full amount of attorneys' fees it incurred throughout the litigation.

3. Despite having committed willful patent infringement for over 10 years, the Debtor and its owner, TMA, are using this bankruptcy case as part of their improper refusal to make FieldTurf whole. These improper tactics are apparent when one considers that the Debtor also filed the *Debtor's Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 105, 363, and 365: (I) Authorizing the Sale of the Debtor's Property Free and Clear of Liens, Claims and Encumbrances; (II) Authorizing the Assumption and Assignment of Contracts and Leases; and (III) Granting Related Relief* [Docket No. 15] (the "Private Sale Motion"). Under the terms of the proposed private sale, the Debtor and three affiliates also controlled by TMA would sell their assets to a third party for approximately $92 million. The purchaser did not provide an allocation of the $92 million among the Debtor and its non-debtor affiliates. Instead, TMA caused a mere $16.1 million of the $92 million to be allocated to the Debtor, with the remaining $75 million being allocated to the Other Sellers, all of whom are likewise controlled by TMA.

4. The reason for this lopsided allocation is clear: TMA is trying to orchestrate a sale by which the Debtor obtains only a small fraction of the sale proceeds, and not nearly enough to pay its unsecured creditors, including the massive damages its patent infringement caused

FieldTurf. TMA, on the other hand, would reap the vast majority of the $75 million paid to the Other Sellers. TMA is attempting to use the Debtor's bankruptcy case to get a windfall, when what it should be doing is paying for the damage caused by the Debtor it owns and controls.

5. TMA, the parent of the Debtor and the non-debtor "Other Sellers", controls all aspects of the Debtor's sale transaction. TMA was intimately involved in developing a value allocation which conveniently pays TMA's other, non-debtor subsidiaries in excess of 82% of the overall cash consideration. Even worse, TMA has blocked any other party from competing for the Debtor's assets. One of the Debtor's key assets is an alleged license of intellectual property from TMA, including the AstroTurf trademark. TMA is trying to use that license as a sword in its effort to steer value away from the Debtor towards the other TMA-controlled sellers, and in an effort to stop anyone else from bidding. The Private Sale Motion states in no uncertain terms that TMA "will not consent to the assignment of the License Agreement by the Debtor to any third party other than in connection with the [proposed private sale]".

6. TMA's controlled allocation of a mere 18% of the proposed $92,000,000 consideration to the Debtor is thus nothing more than a tactic to avoid satisfying FieldTurf's claim (and those of other creditors) against the Debtor and steer the value in the Debtor's assets to TMA. In essence, the Debtor and TMA are asking the Court to allow the Debtor's owner to enrich itself at the expense of the Debtor's non-insider creditors.

7. Beyond the troubling set of facts surrounding the proposed sale, the history of TMA as a purported prepetition creditor of the Debtor also raises red flags. TMA asserts a prepetition secured claim against the Debtors for money allegedly loaned to the Debtor prepetition. The timing of that financing, however, reveals that TMA caused the Debtor to accept financing in lieu of equity from TMA only after FieldTurf commenced litigation against

the Debtor, and caused the Debtor to secure that purported debt only after FieldTurf obtained a sizeable award against the Debtor. TMA's efforts to avoid paying for the damage caused to FieldTurf thus commenced long before this case was filed; the proposed non-arm's length private sale at below fair value is the final step in this strategy to divert the value in the Debtor away from FieldTurf and the other creditors and to TMA.

8. Under this highly unusual set of facts, this Court should consider evidence on the totality of TMA's role in the Debtor's capital structure before approving further financing from TMA. This Court should evaluate the DIP Motion only upon a complete and clear record regarding the TMA's interests in the case in general, and see the Debtor's request for financing for what it is: an insider transaction benefitting equity over non-insider creditors.

## **OBJECTION**

### I. There Is No Risk of Irreparable Harm.

9. Bankruptcy Rule 4001(c) states that the bankruptcy court may authorize the obtaining of credit on an interim basis only to the extent necessary to avoid immediate and irreparable harm to the estate. The Debtor has not met that burden.

10. The Debtor's Initial Approved Budget appears not to be a cash budget showing this Court and other parties-in-interest what the immediate and actual cash need is. It is an accrual budget. The Debtor admitted as much at the first day hearing in this case last week. Accordingly, the Debtor has failed to establish any need for further immediate financing or any likelihood of immediate and irreparable harm.

11. The Court should also note that the vast majority of the Debtor's disbursements are made, upon information and belief, to "Other Sellers," all of whom are affiliates of the Debtor. This is yet another way in which this case is being used to enrich TMA's equity interest and harm creditors. The Debtor should be required to show this Court it has exhausted all efforts

to negotiate favorable supplier terms with the "Other Sellers" who are becoming enriched in this case before allowing the Debtor to incur financing from TMA which is simply funneled towards TMA's other subsidiaries at a profit.

### II. The Motion is an Insider Transaction Which Merits Heightened Scrutiny.

12.  The Debtor claims it negotiated the DIP loan terms with the Parent at arm's length. This assertion should be met with extreme skepticism. TMA has its fingers in every pie in this case. Even if this Court is satisfied the DIP terms themselves were negotiated at arm's length, the Court must recognize this case as an insider-dominated transaction for the benefit of equity, at the expense of non-insider creditors. The evidence will provide good cause to subordinate TMA's purported indebtedness.

13.  Before the Motion is approved, even on an interim basis, the Court must hear evidence regarding the following:

- TMA became a creditor only after FieldTurf commenced litigation against the Debtor; at that time, TMA shifted its longstanding practice from contributing cash to the Debtor in the form of equity to debt.

- TMA caused this purported debt to become secured only after FieldTurf obtained a sizeable jury award.

- The process used to identify alternative DIP providers or sale transactions.

- TMA's bid-chilling decision to announce to the world it will license necessary intellectual property only to APT Acquisition Construction Corp. (the "Buyer").[1]

- An allocation which demands scrutiny on its face. Out of the $92 million in aggregate consideration being paid by the Buyer, a mere $16.1 million is allocated to the Debtor–the main operating company—and $75 million is allocated to the research and development and "other services and materials" arms of non-Debtor entities owned by TMA.[2]

---

[1] Docket No. 15 at ¶25.

[2] FieldTurf believes the Debtor's actual value is well in excess of the allocated price.

### III. A Good Faith Finding is Not Warranted.

14.     Even though the Debtor has made limited and incomplete disclosures concerning TMA's interests in the Debtor and the Other Sellers, it is clear that TMA is exerting full control over the Debtor's case in order to secure value to itself via its equity interests in the Other Sellers.

15.     As an insider transaction, the proposed DIP loan is subject to rigorous scrutiny by this Court. *See WHBA Real Estate Ltd. P'ship v. Lafayette Hotel P'ship (In re Lafayette Hotel P'ship)*, 227 B.R. 445, 454 (S.D.N.Y. 1998) ("[S]ince there is an incentive and opportunity to take advantage . . . insiders' loans in a bankruptcy must be subject to rigorous scrutiny."), *aff'd*, 198 F.3d 234 (2d Cir. 1999); *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holdings Unsecured Claims (In re Papercraft Corp.)*, 211 B.R. 813, 823 (W.D. Pa. 1997) ("[I]nsider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein."), *aff'd*, 160 F.3d 982 (3d Cir. 1998).

16.     Owners and controllers of the equity of the Debtor seeking to act as DIP lenders are not acting in good faith if they are "acting principally in [their] own interests." *Norris Square Civic Assoc. v. St. Mary Hosp. (In re St. Mary Hosp.)*, 86 B.R. 393, 402 (Bankr. E.D. Pa. 1988) (Court "refuse[d] to find the terms [of the financing agreement] 'fair, reasonable, and adequate' under the circumstances," and looked "beyond the Debtor's immediate financial circumstances to determine who [was] responsible for creating those circumstances.") (citing *In re Crouse Group, Inc.*, 71 B.R. 544, 551 (Bankr. E.D. Pa. 1987)). This is not a normal situation where an institutional lender is providing post-petition financing to maximize the value of its

collateral. TMA has a wholly different objective: to effectuate a sale of the Debtor's assets, along with certain assets not subject to the Bankruptcy Court's jurisdiction, subject to an allocation benefitting only TMA, leaving the Debtor's creditors to hold the bag.

17. The Motion is one step in a case that appears designed to solely benefit the Debtor's equity holder, which (1) owns the Debtor's primary business partners (the Other Sellers); (2) is the Debtor's prepetition lender; (3) is the Debtor's DIP lender; and (4) is the primary beneficiary of the Debtor's sale transaction. This is not a lender acting in good faith. Accordingly, FieldTurf respectfully requests the Court deny TMA the protections of Section 364(e).

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, FieldTurf respectfully requests entry of an Order (a) denying further interim financing; (b) denying any requests for a finding that TMA acted in good faith; and (c) granting such other and further relief this Court deems just.

Dated:  July 5, 2016                                          Respectfully Submitted:

Baker, Donelson, Bearman, Caldwell             /s/ Ron C. Bingham, II
   & Berkowitz, P.C.                                      RON C. BINGHAM, II
1600 Monarch Plaza                                         Georgia State Bar No. 057240
3414 Peachtree Street, NE
Atlanta, Georgia 30324
Telephone:  404.443.6721
Email: rbingham@bakerdonelson.com
*Attorneys for FieldTurf USA, Inc.*

                                                    - and -

                                                    /s/ Daniel J. McGuire
Winston & Strawn LLP                                   DANIEL J. MCGUIRE*
35 W. Wacker Drive                                       Illinois State Bar No. 6239526
Chicago, IL  60601-9703
(312) 558-6154 - Telephone                          (Application for Admission Pro Hac Vice to
dmcguire@winston.com                              be submitted)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| ASTROTURF, LLC, | CASE NO.: 16-41504-PWB |
| Debtor. | |

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing **FIELDTURF USA, INC.'S LIMITED OBJECTION TO DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING FROM TEXTILE MANAGEMENT ASSOCIATES, INC., PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE; (II) GRANTING LIENS AND SUPER-PRIORITY CLAIMS; (III) MODIFYING THE AUTOMATIC STAY; AND (IV) SCHEDULING A FINAL HEARING ON THE DEBTOR'S MOTION TO INCUR SUCH FINANCING ON A PERMANENT BASIS AND APPROVING THE FORM AND METHOD OF NOTICE THEREOF** was sent via first-class mail, postage prepaid, to those parties listed below on this the **5th** day of **July, 2016.**

AstroTurf, LLC
2860 Abutment Road
Dalton, Georgia 30720

Jeffrey R. Dutson, Esq.
King & Spalding, LLP
1180 Peachtree Street
Atlanta, Georgia 30309

Martin P. Ochs, Esq.
Office of U.S. Trustee
362 Richard Russell Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

Mark M. Maloney, Esq.
King & Spalding
1180 Peachtree Street
Atlanta, Georgia 30309

| | |
|---|---|
| William A. Dupre, IV<br>Miller & Martin, PLLC<br>Suite 2100<br>1180 West Peachtree Street, N.W.<br>Atlanta, GA 30309 | John F. Isbell<br>Thompson Hine LLP<br>Suite 1600 - Two Alliance Center<br>3560 Lenox Road<br>Atlanta, GA 30326 |

This **5th** day of **July, 2016**.

| | |
|---|---|
| Baker, Donelson, Bearman, Caldwell<br>    & Berkowitz, P.C.<br>1600 Monarch Plaza<br>3414 Peachtree Street, NE<br>Atlanta, Georgia 30324<br>Telephone:  404.443.6721<br>Email: rbingham@bakerdonelson.com<br>*Attorneys for FieldTurf USA, Inc.* | /s/ Ron C. Bingham, II<br>RON C. BINGHAM, II<br>Georgia State Bar No. 057240 |